# IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **WILLIE JEAN CHERRY JOHNSON**, | ) | Shelby County Circuit Court |
|  | ) | No. 150843 R.D. |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9901-CV-00015 |
|  | ) |  |
| **JAMES FRANKLIN JOHNSON**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

F U E D

**September 14, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable Robert L. Childers, Judge**


**Ronald D. Krelstein**, Memphis, Tennessee
Attorney for Plaintiff/Appellant.


**Dennis J. Sossaman**, Memphis, Tennessee
Attorney for Defendant/Appellee.


OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

Plaintiff Willie Jean Cherry Johnson (Wife) appeals the trial court's judgment denying her petition to modify a final divorce decree previously entered by the court in December 1996. We affirm the trial court's judgment based upon our conclusion that the disposition of this case is controlled by this court's decision in *Gilliland v. Stanley*, No. 02A01-9603-GS-00056, 1997 WL 180587 (Tenn. App. Apr. 16, 1997) (*no perm. app. filed*).

The parties were married in 1967 and were separated in 1994 after twenty-seven years of marriage. Throughout this time, Defendant/Appellee James Franklin Johnson (Husband) was on active duty with the United States Marine Corps. After their separation, the parties entered into a marital dissolution agreement (MDA) which purported to divide the Husband's military retirement benefits. As pertinent, the MDA provided that

> Husband agrees that Wife shall receive the sum of $1,845.00 per month as support commencing May 1, 1996, and continuing until February 1, 1997, at which time Husband will begin receiving his military retirement. In the event that Husband's military retirement commences sooner than February 1, 1997, support payments will stop as of that date. In the event that retirement does not become effective until after February 1, 1997, then alimony will continue until the first of the month following the effective date of retirement. Upon retirement, Wife shall receive one-half of all military retirement benefits due the Husband.
>
> . . . .
>
> Husband further agrees that he will provide proper notice to the appropriate military pay disbursement office of Wife's entitlement to receive one-half of all retirement benefits Husband receives effective with his retirement from the active duty with the United States Marine Corps. A copy of the letter making the designation shall be forwarded to Wife within 14 days after the notice has been given to the appropriate disbursement office. Husband agrees that Wife shall be entitled to provide the disbursement office with a copy of the [MDA] or any other appropriate order, including a Qualified Domestic Relations Order. Husband agrees to execute a Qualified Domestic Relations Order for entry in this cause and agrees to provide appropriate information to counsel for Wife.

In entering the final divorce decree, the trial court adopted, approved as equitable, and incorporated by reference the terms and provisions of the parties' MDA. In doing so, the trial court specifically referred to the MDA's provisions dividing the Husband's military retirement benefits:

The Court specifically approves that portion of the [MDA] which

provides that [the Wife] shall be entitled to receive 50% of all military retirement benefits due to [the Husband] upon his retirement from active duty with the United States Marine Corps.

The trial court also set forth certain orders in the final divorce decree that were designed to ensure compliance with the MDA's provisions dividing the Husband's military retirement benefits. The trial court ordered

that the Clerk of the Court provide [the Wife] with a certified copy of the Final Decree in accordance with the Uniformed Services Former Spouse's Protection Act, 10 U.S.C. § 1408, so that [the Wife] may comply with Form DD2293 and receive her share of the retirement benefits due and owing to [the Husband].

The trial court also ordered "that upon the retirement of [the Husband] from active duty, [the Wife] shall receive 50% of all retirement benefits due [the Husband]." Finally, the trial court indicated that it was retaining "jurisdiction over this matter in order to enforce all rights and remedies which may be available pursuant to the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408."

The Wife initiated the present proceeding in May 1998 when she filed a petition to modify the final divorce decree. As grounds for modification, the Wife's petition contained the following allegations:

In accordance with the [MDA] and the Final Decree of Divorce, once [the Husband] retired from active duty, [the Wife] began receiving her share of [the Husband's] retirement benefits. [The Wife] received $1,446.00 monthly representing 50% of [the Husband's] retirement benefits.

Some time in late 1997, [the Husband] decided to accept part of his retirement pay as service connected disability benefits. These benefits are received by [the Husband] tax free.

However, federal law does not treat disability benefits as marital property for the purposes of being divided as a portion of the marital estate. As a result, the amounts now being received by [the Husband] as disability, $399.00 per month, are subtracted from his total gross retirement pay of $2,929.00. [The Wife's] share of [the Husband's] retirement benefits has dropped from $1,446.00 to $1,265.00.

In order to recoup this loss, the Wife asked the trial court to enter an order modifying

the final divorce decree by

> requiring [the Husband] to pay as alimony the sum of $181.00 per month representing the difference between what [the Wife] would have received under the MDA, and the amount that she is now receiving based upon the unilateral modification of the retirement benefits owed to [the Husband].

The Wife later amended her modification petition to assert, as an alternative ground, that the Wife was entitled to relief from the final divorce decree pursuant to rule 60.02 of the Tennessee Rules of Civil Procedure. As amended, the Wife's petition asserted that the reduction in the Husband's retirement benefits constituted "any other reason justifying relief from the operation of the judgment." *See* T.R.C.P. 60.02(5). In support of her amended petition, the Wife submitted an affidavit which averred that, prior to executing the MDA, the Husband failed to inform the Wife that he already had begun proceedings to determine whether he could receive disability pay upon his retirement from the United States Marine Corps. The Wife's affidavit further averred that she did not learn of the reduction in benefits until some time after January 1, 1998, when she learned that her monthly payment was being reduced from $1,446.00 to $1,265.00.

In October 1998, the trial court entered its judgment denying the Wife's petition to modify the final divorce decree. In denying the Wife's petition, the trial court found that this court's decision in *Gilliland v. Stanley*, No. 02A01-9603-GS-00056, 1997 WL 180587 (Tenn. App. Apr. 16, 1997) (*no perm. app. filed*), was controlling. The Wife has appealed, contending that the trial court erred in ruling that the parties' MDA did not require the Husband to pay one-half of his disability benefits to the Wife.

We agree with the trial court's ruling that *Gilliland v. Stanley*, No. 02A01-9603-GS-00056, 1997 WL 180587 (Tenn. App. Apr. 16, 1997) (*no perm. app. filed*), controls the outcome of this case. In *Gilliland v. Stanley*, the final divorce decree, entered in July 1989, ordered the husband to pay by allotment to the wife thirty-five percent (35%) of the husband's military retirement benefits when the same vested as long as the husband received these benefits. When the husband retired in 1990, the wife began receiving 35% of the husband's military retirement benefits in accordance with the terms of the final divorce decree. Some time later,

however, the husband "caused his military retirement benefits to be decreased when he elected to waive a portion of the retirement pay so that he instead could receive Veteran's Administration disability payments." *Gilliland v. Stanley*, 1997 WL 180587, at *1.[1] The decrease in the husband's military retirement benefits "resulted in a corresponding reduction in the amount of retirement benefits being paid to [the wife] as her division of marital property." *Id.*

When the wife discovered the husband's actions, she filed a petition seeking to enforce the provisions of the final divorce decree. *Gilliland v. Stanley*, 1997 WL 180587, at *1. Specifically, the wife asked the trial court to increase her interest in the husband's military retirement benefits from 35% to 49.5% so that she would receive the same amount she had received prior to the husband's waiver of retirement pay. *Id.*, at *3. The trial court denied the wife's request, citing the United States Supreme Court's decision in *Mansell v. Mansell*, 490 U.S. 581 (1989), and finding that the husband had acted within his rights when he elected to waive a portion of his retirement pay in order to receive disability payments. *Id.*, at *1.

On appeal, this court affirmed the trial court's refusal to increase the wife's interest in the husband's military retirement benefits. We first cited *Mansell v. Mansell*, 490 U.S. 581 (1989), wherein "the United States Supreme Court held that, under the Former Spouses' Protection Act, state courts do not have 'the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits.'" *Gilliland v. Stanley*, 1997 WL 180587, at *2 (quoting *Mansell*, 490 U.S. at 594-95) (footnote omitted). We also quoted from Justice O'Connor's dissent in *Mansell*, wherein she noted that "[t]he harsh reality of this holding is that former spouses . . . can, without their consent, be denied a fair share of their ex-

_____

[1]As we explained there,

> [i]n order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay. [38 U.S.C. § 3105 (1982 ed. & Supp. V)]. Because disability benefits are exempt from federal, state, and local taxation, [38 U.S.C. § 3101(a) (1982 ed. & Supp. V)], military retirees who waive their retirement pay in favor of disability benefits increase their after-tax income. Not surprisingly, waivers of retirement pay are common.

*Gilliland v. Stanley*, 1997 WL 180587, at *1 n.1 (quoting *Mansell v. Mansell*, 490 U.S. 581, 583-84 (1989)).

spouse's military retirement pay simply because he elects to increase his after-tax income by converting a portion of that pay into disability benefits." *Gilliland v. Stanley*, 1997 WL 180587, at *3 (quoting *Mansell*, 490 U.S. at 595 (O'Connor, J., dissenting)).

Notwithstanding our recognition of this inequity, we affirmed the trial court's decision, citing the long-standing rule in this state that, once a final divorce decree becomes final, the courts may not subsequently modify the decree's division of marital property. We explained that the husband's

> military retirement benefits, which accumulated during the parties' marriage, constituted marital property available for equitable distribution, subject to the limitations imposed by the Former Spouses' Protection Act. *Towner v. Towner*, 858 S.W.2d 888, 891 (Tenn. 1993). Thus, the payments to [the wife] in this case are, in effect, a distribution to her of a portion of [the husband's] military retirement benefits. *Id*. Inasmuch as the payments represent the division of marital property, the payments are not subject to modification by the court. *Id*. at 892.
>
> . . . .
>
> In Tennessee, . . . the law is clear: . . . the division of marital property is not subject to subsequent modification by the courts. *Towner v. Towner*, 858 S.W.2d 888, 892 (Tenn. 1993); *Jones v. Jones*, 784 S.W.2d 349, 351 (Tenn. App. 1989). Moreover, Tennessee law does not appear to afford relief from judgment under the circumstances of this case. *See, e.g.*, *Duncan v. Duncan*, 789 S.W.2d 557, 564 (Tenn. App. 1990) (denying wife's motion for relief from judgment under "catch-all" provision of T.R.C.P. 60.02(5) where, based on testimony of husband's accountants, trial court valued husband's business at $400,000 but, pending appeal of final divorce decree, husband sold business for $2.5 million); . . . . Accordingly, we are constrained to conclude that the trial court in this case correctly declined to modify the property provisions of the final divorce decree relative to [the wife's] interest in [the husband's] military retirement benefits.

*Gilliland v. Stanley*, 1997 WL 180587, at **3-5 (footnotes and citations omitted).

In the present case, the Wife asked the trial court to modify the alimony provisions of the final divorce decree rather than the decree's property provisions. Nevertheless, we conclude that the same principles apply and that *Gilliland v. Stanley* requires this court to affirm the trial court's judgment denying the Wife's petition to modify. Like the division of property, an award of alimony *in solido* (as opposed to an award of alimony *in futuro*) is not subject to modification once

a divorce decree becomes final. *Self v. Self*, 861 S.W.2d 360, 363 (Tenn. 1993); *Day v. Day*, 931 S.W.2d 936, 939 (Tenn. App. 1996); *Brewer v. Brewer*, 869 S.W.2d 928, 935 (Tenn. App. 1993). In our view, the alimony awarded by the trial court in this case could only be characterized as an award of alimony *in solido*. *See Self*, 861 S.W.2d at 362-63.[2] As such, the alimony award was not subject to modification by the trial court after the divorce decree became final.

In accordance with *Gilliland v. Stanley*, we further conclude that the Wife was not entitled to relief from the final divorce decree pursuant to rule 60.02(5) of the Tennessee Rules of Civil Procedure, which authorizes the trial court to relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment." T.R.C.P. 60.02(5). In *Gilliland v. Stanley*, we observed that "Tennessee law does not appear to afford relief from judgment under the circumstances of this case." *Gilliland v. Stanley*, 1997 WL 180587, at *5. In making this observation, we cited *Duncan v. Duncan*, 789 S.W.2d 557, 564 (Tenn. App. 1990), wherein this court explained that, despite its broad language, the catch-all[3] provision of rule 60.02(5)

> has been narrowly construed. *Tyler v. Tyler*, 671 S.W.2d 492, 495 (Tenn. Ct. App. 1984). It is intended to provide post-judgment relief only in the most unique, exceptional, or extraordinary circumstances. *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976); *Tyler v. Tyler*, 671 S.W.2d 492, 495 (Tenn. Ct. App. 1984).
>
> [Rule] 60.02(5)'s standards are more demanding than those applicable to the other grounds for [rule] 60.02 relief. *Tennessee Dep't of Human [Servs.] v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985). It is, as a general rule, applicable to situations that are not covered by the other clauses in [rule] 60.02 or to cases of extreme hardship. *See* 7 J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 60.27[2] (2d ed. 1989); 11 C. Wright & A. Miller, *Federal*

---

[2]Even if the award could be characterized as alimony *in futuro*, the trial court's authority to modify the award terminated on the effective date of the Husband's retirement from the Marine Corps. *See Waddey v. Waddey*, No. 01S01-9811-CV-00198, slip op. at 9 (Tenn. Sept. 7, 1999). The Wife has not suggested that the purpose of the alimony was rehabilitative, in which case the award of alimony would have remained in the court's control for the duration of the award. *See* T.C.A. § 36-5-101(d)(2) (1996).

[3]Courts sometimes refer to rule 60.02(5) as the "catch-all" provision because it enables the trial court to relieve a party from a final judgment when such relief is justified by "any other reason," *i.e.* a reason not set forth in rules 60.02(1) through 60.02(4). *See, e.g.*, *Nails v. Aetna Ins. Co.*, 834 S.W.2d 289, 294 (Tenn. 1992); *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990); *Duncan v. Duncan*, 789 S.W.2d 557, 564 (Tenn. App. 1990).

*Practice and Procedure* § 2864, at 216 (1973).

On appeal, the Wife now suggests that she actually was asking the trial court to enforce the parties' MDA regarding the division of retirement benefits, and she contends that the term "military retirement benefits" used in the MDA was broad enough to include both retired pay and disability pay. We disagree. Veterans' disability payments do not constitute military retirement benefits. In *Mansell*, the United States Supreme Court explained that retirement benefits are paid to members of the Armed Forces who have served the minimum specified period of time, and the payments are calculated according to the member's rank and the number of years served. *Mansell v. Mansell*, 490 U.S. 581, 583 (1989) (citing 10 U.S.C. §§ 3926, 3991, 6325-6327, 8929 (1982 ed. and Supp. V)). Disability benefits, on the other hand, are paid to veterans who have become disabled as a result of military service, and these payments are calculated according to "the seriousness of the disability and the degree to which the veteran's ability to earn a living has been impaired." *Mansell*, 490 U.S. at 583 (citing 38 U.S.C. §§ 310, 314, 331, 355). The Supreme Court's holding in *Mansell* makes clear that, as a matter of law, the military retirement benefits subject to distribution by a state court do not include veterans' disability payments, nor do they include retired pay that has been waived in order to receive disability pay. *Mansell*, 490 U.S. at 588-89.

The Wife also attempts to distinguish this court's holding in *Gilliland v. Stanley* by pointing out that, in the present case, the trial court retained jurisdiction to enforce the parties' MDA regarding the division of retirement benefits. We believe that this argument mischaracterizes the trial court's retention of jurisdiction in this case. In the present case, the trial court did not retain jurisdiction for the specific purpose of enforcing the parties' agreement regarding the division of the Husband's military retirement benefits. *Cf. In re Marriage of Krempin*, 83 Cal. Rptr. 2d 134, 136, 142 (Cal. Ct. App. 1999) (reaching different result where parties' MDA specified that trial court would "reserve jurisdiction to make such orders relating to these retirement benefits as are necessary to carry out this agreement"); *McHugh v. McHugh*, 861 P.2d 113, 114 (Idaho Ct. App. 1993) (wherein settlement agreement specified that trial court would retain jurisdiction to modify wording of order "so as to satisfy any requirement that the Navy may have which is necessary to effectuate the payments to [the wife] as envisioned by this agreement"). Rather, the trial court retained jurisdiction over this matter for the express purpose of enforcing "all rights and remedies which may

be available [to the parties] pursuant to the Uniformed Services Former Spouses' Protection Act." Although the Wife contends that she has been denied certain property rights to which she is entitled under the parties' MDA, the Wife has not suggested that she has been denied any rights or remedies available to her under the Former Spouses' Protection Act.

Our affirmance of the trial court's judgment is supported by the recent decision of the Kansas Court of Appeals in ***In re Marriage of Pierce***, ___ P.2d ___, 1999 WL 460952 (Kan. Ct. App. 1999). In ***Pierce***, the parties' property settlement agreement (PSA) awarded the wife, Priscilla, "eighteen twentieths (18/20ths) of one-half (½) of the military retirement benefits of [the husband, Douglas], pursuant to 10 USC 1408 [the Former Spouses' Protection Act]." ***Pierce***, 1999 WL 460952, at \*1. At the time of the parties' divorce, Douglas had retired from the United States Air Force, and he was receiving retirement pay. ***Id***. In accordance with the parties' PSA, Priscilla began receiving the amount of $600 per month as her share of Douglas's military retirement benefits. ***Id***., at \*2. Thereafter, however, the Veterans Administration changed Douglas's disability rating. As a result, all of Douglas's retirement pay was converted to disability pay, and Priscilla's monthly payment was reduced from $600 to nothing. Consequently, Priscilla filed a motion asking the trial court to enforce the PSA by compelling Douglas to reinstate his military retirement pay or, alternatively, to modify the PSA by requiring Douglas to pay to Priscilla the amount she otherwise would have received from Douglas's retirement. ***Id***.

The trial court denied Priscilla's motion, and the court of appeals affirmed. After reviewing the United States Supreme Court's decision in ***Mansell v. Mansell***, 490 U.S. 581 (1989), the court reasoned:

> ***Mansell*** makes it perfectly clear that the state trial courts have no jurisdiction over disability benefits received by a veteran. The trial court in this case cannot order Douglas to change the payments back to retirement benefits, and it cannot order him to pay his disability benefits to Priscilla. We conclude the court may not do indirectly what it cannot do directly.
>
> We are unable to conclude that, in the present context, the trial court has any method of granting relief to Priscilla. Douglas has not violated the terms of the property settlement agreement. There is absolutely nothing in that agreement that forbids Douglas from waiving all of his retirement pay in order to receive his disability benefits. There is no set monthly amount which Priscilla was to

receive under the agreement. There is no guarantee by Douglas, by the Air Force, or by anyone else as to the length of time the retirement pay would exist. This very unambiguous agreement simply gives Priscilla 18/20ths of one-half of Douglas' retirement pay. Although it does not say so, we presume that Priscilla would receive this amount so long as retirement pay was paid. It appears that she did so. As of this date, Douglas has no retirement pay, but if he did, Priscilla would receive 18/20ths of one-half of that pay. It should have been perfectly obvious to anyone concerned in 1993 that if Douglas waived all of his retirement pay for a VA disability pension, Priscilla would get 18/20ths of one-half of nothing. Despite this fact, nothing was put in the agreement to protect Priscilla from what appears to have been an absolute right and option which Douglas could exercise with regard to his retirement pay.

*Pierce*, 1999 WL 460952, at **3-4.

The court also considered, but rejected, the argument that Priscilla was entitled to relief from the divorce decree under the Kansas version of rule 60.02, codified at K.S.A. 60-260(b). The court explained that

[i]n this case, far more than a year has passed since the effective date of this divorce judgment, and any motion filed by Priscilla would not afford her any relief under that statute.

We have searched the record and the pleadings filed by Priscilla and find no allegation that Douglas was guilty of fraud or any overt bad faith in the way he dealt with his retirement plan.

We hold that the trial court did not err in denying Priscilla's motion as filed. Priscilla had every ability at the time of the divorce to protect herself from the situation with which we now deal. She failed to do so. She could have insisted that Douglas agree that he would not convert his retirement funds to disability funds. She did not do so. She could have provided that in the event the retirement funds were converted to disability benefits that Douglas would be required to continue to pay her from other assets. She did not do so. We conclude that in the interest of justice and public policy, the finality of property divisions in a divorce decree is of significant importance. This degree has been final for over 4 years. Priscilla has shown us no valid reason to tinker with that decree.

In the long run, Priscilla was awarded an asset which has significantly declined in value. We do not believe that when an asset awarded under a divorce decree has subsequently declined in value, the party harmed thereby can reopen the divorce and demand additional property or more payments. In essence, this is what Priscilla seeks in this matter.

*Pierce*, 1999 WL 460952, at *5; *but see Clauson v. Clauson*, 831 P.2d 1257, 1258 (Alaska 1992)

(reaching contrary result by holding that wife was entitled to relief from judgment pursuant to catch-all provision); ***Torwich v. Torwich***, 660 A.2d 1214, 1216 (N.J. Super. Ct. App. Div. 1995) (same); ***In re Marriage of Jennings***, 980 P.2d 1248, 1254 (Wash. 1999) (same).

We recognize, as we did in ***Gilliland v. Stanley***, that "this type of post-decretal action by military retirees has caused problems for courts and litigants across the nation in divorce cases where a percentage of military retirement benefits has been distributed as marital property." ***Gilliland v. Stanley***, 1997 WL 180587, at *4 (***quoted in In re Marriage of Gaddis***, 957 P.2d 1010, 1013-14 (Ariz. Ct. App. 1997), ***cert. denied***, 119 S. Ct. 73 (1998), and ***In re Marriage of Krempin***, 83 Cal. Rptr. 2d 134, 137 (Cal. Ct. App. 1999)). Although we adhere to our holding in ***Gilliland v. Stanley***, we remain troubled by the dilemma presented by such post-divorce conduct. As we explained there,

> [a] military retiree may be entitled to convert a portion of his retirement pay to disability pay, thereby reducing his tax liability. ***See Mansell***, 490 U.S. at 583-84 (citing 38 U.S.C. §§ 3101(a), 3105 (1982 ed. & Supp. V)). By doing so, however, the military retiree unilaterally alters the equitable distribution scheme fashioned by the trial court and, in some cases, by the parties themselves.

***Gilliland v. Stanley***, 1997 WL 180587, at *4 (citing ***Mansell***, 490 U.S. at 595 (O'Connor, J., dissenting)); ***accord Clauson v. Clauson***, 831 P.2d 1257, 1261 (Alaska 1992) (noting that husband unilaterally and extrajudicially modified divorce decree when he decided to waive his retirement pension in order to collect disability benefits); ***Price v. Price***, 480 S.E.2d 92, 93 (S.C. Ct. App. 1996) (noting that husband's waiver of military retirement pay unilaterally deprived wife of property granted to her pursuant to property settlement agreement).

In recent years, an increasing number of jurisdictions have refused to allow military retirees to benefit from such post-decree conduct at the expense of their former spouses. ***See In re Marriage of Pierce***, ___ P.2d ___, 1999 WL 460952, at *5 (Kan. Ct. App. 1999) (indicating that "the relief sought by Priscilla has been granted by other state courts" and that, "[i]n total, these constitute the majority of decisions in this type of case"); ***see also*** Major Fenton, ***Uniformed Services Former Spouses' Protection Act and Veterans' Disability and Dual Compensation Act***

*Awards*, Army Law., Feb. 1998, at 31, 32 (indicating that "[a] majority of state courts agree with Justice O'Connor and take equitable action to compensate the former spouse when this reduction in disposable military retirement pay occurs"); *accord In re Marriage of Krempin*, 83 Cal. Rptr. 2d 134, 139 (Cal. Ct. App. 1999) (observing that "[a] review of the out-of-state precedents confirms that this result is nearly universal").

Many of these decisions are distinguishable from *In re Marriage of Pierce*, *Gilliland v. Stanley*, and the present case because they involved contractual or court-ordered provisions designed to guarantee to the ex-spouse a set portion or amount of the military spouse's retirement pay as of the date of the divorce, regardless of any subsequent declines in value of the military pension. In *Owen v. Owen*, 419 S.E.2d 267 (Va. Ct. App. 1992), for example, the parties' property settlement agreement contained a provision distributing to the wife one-half (½) of the husband's gross retirement pay from the Army, "subject only to any [required] deductions for federal and state taxes." *Owen*, 419 S.E.2d at 268. The provision prohibited the husband from taking any action "to defeat [the wife's] right to share in the monthly retirement benefits," and it required the husband to indemnify the wife and to hold her harmless against any breach of this provision by the husband. *Id*. at 269.

Similarly, in *Abernethy v. Fishkin*, 699 So. 2d 235 (Fla. 1997), the parties' property settlement agreement contained a provision prohibiting the husband from "pursuing any course of action" that would defeat the wife's right to receive a portion of the husband's retirement pay. *Abernethy*, 699 So. 2d at 240. The provision "protected the wife's right to receive the property or the value of the property she had been allocated in the property settlement agreement by requiring [the husband] to indemnify [the wife] if [the husband] breached this provision." *Id*.

In *McHugh v. McHugh*, 861 P.2d 113 (Idaho Ct. App. 1993), the parties negotiated a settlement agreement under which the wife was to receive monthly payments of $360.59 from the husband's disposable retired pay. *McHugh*, 861 P.2d at 114. The agreement specified that, with the exception of cost-of-living adjustments, this monthly amount would not be increased or decreased "for any reason." *Id*.

In ***Hisgen v. Hisgen***, 554 N.W.2d 494 (S.D. 1996), the parties' property settlement agreement contained a provision whereby the husband agreed to instruct the Air Force to pay to the wife one-half (½) of his gross annuity payments "prior to any reductions for disability payments or any other deductions." ***Hisgen***, 554 N.W.2d at 495. In a separate provision, the parties warranted that they had "not decreased the economic value of the assets to be received by the other party." ***Id***. at 498.

In ***Price v. Price***, 480 S.E.2d 92 (S.C. Ct. App. 1996), the parties' property settlement agreement contained a provision whereby the husband expressly promised to pay to the wife thirty-four percent (34%) of his "gross military retirement benefits each month, including any accretions." ***Price***, 480 S.E.2d at 93. The parties calculated the monthly amount due the wife based on a gross amount that included the husband's disability pay. ***Id***. at 94. The husband "expressly agreed to remain 'directly responsible' to pay this sum on a monthly basis." ***Id***. at 93.

In ***Torwich v. Torwich***, 660 A.2d 1214 (N.J. Super. Ct. App. Div. 1995), the trial court awarded the wife 22.75% of the husband's disposable retired pay upon his retirement from the United States Army. ***Torwich***, 660 A.2d at 1214. In doing so, the court stated its intention to award the wife this percentage of the husband's retirement pension, less any properly-withheld income taxes, "with no additional reductions from said retired pay." ***Id***.

In ***In re Marriage of Strassner***, 895 S.W.2d 614 (Mo. Ct. App. 1995), the trial court entered a final divorce decree awarding the wife thirty-one percent (31%) of the husband's military pension, which the court calculated as $476.47 per month. ***Strassner***, 895 S.W.2d at 616. The decree prohibited the husband from taking any action that would reduce the wife's share of the husband's pension benefits, including "waiving any portion of retired pay in order to receive increased disability pay." ***Id***. The decree further ordered the husband to indemnify the wife for any breach of this provision. ***Id***.

One rationale behind these decisions is that, although ***Mansell*** prohibits state courts from dividing a military retiree's disability benefits, ***Mansell*** does not prohibit courts from requiring retirees to use other available assets to compensate their ex-spouses for the loss of retirement benefits

occasioned by the voluntary waiver of such benefits in favor of disability benefits. *See In re Marriage of Krempin*, 83 Cal. Rptr. 2d 134, 138 (Cal. Ct. App. 1999); *Abernethy v. Fishkin*, 699 So. 2d 235, 240 (Fla. 1997); *In re Marriage of Strassner*, 895 S.W.2d 614, 618 (Mo. Ct. App. 1995); *Owen v. Owen*, 419 S.E.2d 267, 270 (Va. Ct. App. 1992). Courts additionally reason that the ex-spouse's interest in the military retiree's pension vests at the time the final divorce decree is entered,[4] and that the retiree may not engage in post-decree conduct which impairs this vested interest. *See In re Marriage of Strassner*, 895 S.W.2d 614, 618 (Mo. Ct. App. 1995); *see also In re Marriage of Gaddis*, 957 P.2d 1010, 1013 (Ariz. Ct. App. 1997), *cert. denied*, 119 S. Ct. 73 (1998); *Dexter v. Dexter*, 661 A.2d 171, 173-74 (Md. Ct. Spec. App.), *cert. denied*, 668 A.2d 36 (Md. 1995).

Significantly, courts have applied this vested-interest theory to grant relief to ex-spouses of military retirees, even in the absence of contractual or court-ordered provisions like those discussed above. In *Dexter v. Dexter*, 661 A.2d 171 (Md. Ct. Spec. App.), *cert. denied*, 668 A.2d 36 (Md. 1995), for example, the parties' settlement agreement merely awarded 47.5% of the husband's military pension to the wife on a monthly basis "as, if, and when" it was paid by the Department of the Army to the husband. *Dexter*, 661 A.2d at 171. After entering into the settlement agreement, the husband retired from the Army and began receiving monthly retirement benefits. Pursuant to the agreement, the wife also began receiving her share of these monthly benefits. *Id*. Shortly after retiring, however, the husband voluntarily waived his rights to the Army retirement benefits in order to qualify for greater Veterans Administration disability benefits. As a result, the wife's monthly retirement benefits were reduced to zero. *Id*. at 172.

Consequently, the wife filed an action in which she sought to enforce the provisions of the parties' settlement agreement as incorporated into the decree of divorce. The trial court entered an order enforcing the parties' agreement, and the appellate court affirmed. The court reasoned that

---

[4]Alternatively, the ex-spouse's interest in the military spouse's retirement benefits may vest as of a date specified in the final decree, *see In re Marriage of Gaddis*, 957 P.2d 1010, 1013 (Ariz. Ct. App. 1997), *cert. denied*, 119 S. Ct. 73 (1998), or, at the very latest, when the parties begin receiving the benefits. *See Dexter v. Dexter*, 661 A.2d 171, 173-74 (Md. Ct. Spec. App.), *cert. denied*, 668 A.2d 36 (Md. 1995).

[t]he trial court found, in contract, and applying contract principles that, under the [settlement] agreement, each party had an obligation to take reasonable steps to bring the agreement to "fruition." We agree. The trial court then rendered judgment for past sums that would have been received had [the husband] not unilaterally violated the terms of the agreement by waiving and rejecting the retirement benefits after they had accrued and vested and were being received by both parties.

. . . The inability of [the wife] to receive the benefits she bargained for is caused not by any federal statute or case law, but by [the husband's] rejection, by waiver, of the retirement benefits that he had agreed were to be partially hers. . . .

. . . .

We hold that under Maryland contract law where, as in the case *sub judice*, the parties enter into an agreement that one spouse will receive a percentage of pension benefits, on a periodic basis, when they become payable, and when, as here, they are already payable and being paid, the pensioned party may not hinder the ability of the party's spouse to receive the payments she has bargained for, by voluntarily rejecting, waiving, or terminating the pension benefits. We hold that the voluntary waiver of [the husband's] Army retirement pension was under Maryland law a breach of contract, for which the measure of past damages is the amount the receiving spouse would have received had [the husband] not committed the breach.

*Dexter*, 661 A.2d at 174-75. In defending its decision, the court further noted that

this is not a case of retirement benefits never vesting. They had vested. [The husband] had retired. [The parties] were both receiving benefits under the agreement when [the husband] unilaterally wiped out the benefits by waiving them.

*Id*. at 173 n.3.

The court employed a similar analysis in *In re Marriage of Gaddis*, 957 P.2d 1010 (Ariz. Ct. App. 1997), *cert. denied*, 119 S. Ct. 73 (1998). In that case, the husband retired from the United States Air Force in April 1992. *Gaddis*, 957 P.2d at 1010. Thereafter, the parties were divorced, and the trial court entered a judgment awarding the wife one-half (½) of the husband's military retirement benefits "as of February 1994." *Id*. Pursuant to the judgment, the wife began receiving her share of the husband's disposable retired pay. This amount ranged from approximately $750 to $785 per month. Later, however, the husband obtained civil service employment with the federal government. *Id*. at 1011. Like veterans' disability benefits, the husband's civil service pay

had the effect of significantly reducing the husband's military retirement benefits because of a federal statute requiring a "dual compensation offset." *Id.* (citing 5 U.S.C. § 5532(b)). Essentially, this dual compensation offset reduced the husband's disposable retired pay by one half. *Id.*

The wife responded by filing a petition for order to show cause in which she claimed that her share of the husband's retirement pay should not be reduced by the dual compensation offset. *Gaddis*, 957 P.2d at 1011. The trial court granted the relief sought and entered an order requiring the husband to continue paying the amount of $750 per month to the wife. *Id.* The husband appealed, contending that *Mansell* prohibited the trial court from dividing retirement benefits that the husband had waived in order to receive civil service compensation. *Id.* at 1012. The appellate court rejected this argument, reasoning that

> [the husband's] contention, which essentially calls for a *de facto* modification of the dissolution decree's community property allocations, is inconsistent with Arizona law. In Arizona, "[a] decree of dissolution of marriage . . . is final when entered, subject to the right of appeal." A.R.S. § 25-325. Provisions in a decree "as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." § 25-327(A). As our supreme court has emphasized, "[t]he well-established rule is that property settlements are not subject to modification or termination." *DeGryse v. DeGryse*, 135 Ariz. 335, 338, 661 P.2d 185, 188 (1983). . . . "The need for finality and stability in marriage and family law is great. Absent express authorization . . . or a finding of 'extraordinary circumstances' as contemplated by rule 60(c)(6), a property settlement cannot be disturbed." *DeGryse*, 135 Ariz. at 338, 661 P.2d at 188. . . .
>
> These principles strongly support the trial court's implicit refusal to essentially modify the decree in this case by reducing [the wife's] community property interest in [the husband's] retirement pay due to a post-decree change in circumstances unilaterally imposed by [the husband]. . . . In [*In re Marriage of Crawford*, 884 P.2d 210 (Ariz. Ct. App. 1994)], a somewhat analogous case, we held that a husband could not divest his former spouse of a community property interest in accrued military retirement benefits by voluntarily relinquishing those benefits post-decree in order to receive a lump sum Special Separation Benefit, stating: "An employee spouse cannot defeat the nonemployee spouse's interest in retirement benefits by invoking a condition wholly within his or her control." [*Crawford*, 884 P.2d at 213].
>
> Neither the [Former Spouses' Protection Act] nor *Mansell* compels a different conclusion here. Nothing in the Act suggests that a court's final award of a community property interest in retirement pay must be altered when the military retiree obtains civil service employment post-decree. Although the Act precludes a state court from dividing retirement pay waived pursuant to the dual

compensation offset, the trial court did not do so in this case. Rather, the 1994 dissolution decree quantified with certainty [the wife's] community property interest in [the husband's] military retirement benefits by awarding her one-half of those benefits "as of February 1994.". . .

At the time of the decree, there was no dual compensation offset because husband had not yet obtained civil service employment. When he subsequently did, the decree already had established [the wife's] fixed interest in the military retirement benefits. [The husband] deliberately frustrated the decree by voluntarily waiving retirement benefits which the court had vested in [the wife]. He could not reduce that vested interest by unilaterally obtaining civil service employment post-decree. . . . As the Missouri court of appeals stated in a similar case:

> In the present case the trial court awarded [the wife] a percentage of disposable retired pay as calculated at the time of the decree. [The wife's] share in [the husband's] pension was finally determined on the date of the decree as to amounts which had not at that time been waived and, thus, the decree did not violate *Mansell* by distributing waived amounts. The trial court finally determined [the wife's] interest in this marital asset.

*Gaddis*, 957 P.2d at 1012-13 (quoting *In re Marriage of Strassner*, 895 S.W.2d 614, 618 (Mo. Ct. App. 1995) (other citations omitted)).

Based on the decisions of *Dexter v. Dexter*, 661 A.2d 171 (Md. Ct. Spec. App.), *cert. denied*, 668 A.2d 36 (Md. 1995), and *In re Marriage of Gaddis*, 957 P.2d 1010 (Ariz. Ct. App. 1997), *cert. denied*, 119 S. Ct. 73 (1998), the argument could be made in the present case that the Husband has impermissibly impaired the Wife's vested interest in his military retirement benefits. In accordance with the reasoning of these decisions, the Wife's interest in the Husband's military retirement benefits would have vested in December 1996 when the trial court entered the final divorce decree incorporating the provisions of the parties' MDA or, at the very latest, in 1997 when the Wife began receiving her portion of the Husband's retirement benefits. Once the Wife's interest vested, the argument goes, the Husband could not take any subsequent action that would impair the Wife's vested interest.

This reasoning presents an appealing alternative for dealing with these problematic cases. Nevertheless, we decline to adopt it in the present case because we believe that we are bound by the precedent we established in *Gilliland v. Stanley*, No. 02A01-9603-GS-00056, 1997 WL

180587 (Tenn. App. Apr. 16, 1997) (*no perm. app. filed*), and, further, because we believe that the law of this state more closely conforms to that set forth by the Kansas appellate court in *In re Marriage of Pierce*, ___ P.2d ___, 1999 WL 460952 (Kan. Ct. App. 1999).

Accordingly, the trial court's judgment is affirmed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Wife, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
LILLARD, J. (Concurs)